IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

ARTHUR LOPEZ, individually, and on
behalf of himself, and all others similarly
situated individuals,

    CASE NO. 3:16-CV-02663-B

  Plaintiff,

V.

DON HERRING LTD., a Texas
Corporation, TACITO & ASSOCIATES,
INC., a Texas Corporation, BB DIRECT
INC., a Florida Corporation, MONICA
BRAVERMAN, an individual, and Doe
Individuals and Corporations 1-100
inclusive,

  Defendants.

## DEFENDANT TACITO & ASSOCIATES, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS AND, ALTERNATIVELY, MOTION TO STRIKE

Dated:  December 22, 2016    Respectfully submitted,

    By:*/s/ Jennifer D. Jasper*
    Jennifer D. Jasper
    Texas State Bar No. 24027025
    jjasper@munckwilson.com
    Jessica Spaniol
    Texas Bar No. 24072360
    jspanoil@munckwilson.com
    William A. Munck
    Texas State Bar No. 00786127
    wmunck@munckwilson.com
    **MUNCK WILSON MANDALA, LLP**
    12770 Coit Road, Suite 600
    Dallas, Texas 75251
    Telephone: 972.628.3600
    Telecopier: 972.628.3616

    **COUNSEL FOR DEFENDANT**

**TABLE OF CONTENTS**

FACTS ........................................................................................................................... 5

ARGUMENTS AND AUTHORITIES................................................................................ 7

   A.   Standard of Review...................................................................................... 7

   B.   Plaintiff's claim against Tacito should be dismissed for failure to state a plausible claim.  8

MOTION TO STRIKE ..................................................................................................... 14

   A.   Standard of Review.................................................................................... 14

   B.   Immaterial allegations should be struck. ................................................... 15

CONCLUSION & PRAYER ............................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................*passim*
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 .......................................................................*passim*
*D.I.C. v. Niblo*, 821 F.Supp. 441 (N.D. Tex. 1993) ..................................................................... 14
*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) .................................................. 8
*Flagg v. Stryker Corp.,* 647 Fed. Appx. 314 (5th Cir. 2016). ....................................................... 8
*Fontanez v. Skeeple*, 563 Fed. Appx. 847 (2nd Cir. 2014) ......................................................... 10
*Ford-Green v. NHS, Inc.*, 106 F.Supp. 3d 590 (E.D. Pa. 2015) .................................................. 14
*Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314 (5th Cir. 2009) ...................................... 11
*Ledesma for Ledesma v. Dillard Dep't Stores, Inc.*, 818 F. Supp. 983 (N.D. Tex. 1993) ............ 8
*Lutzeier v. Citigroup Inc.*, 305 F.R.D. 107 (E.D. Mo. 2015) ..................................................... 14
*Pichler v. UNITE*, 228 F.R.D. 230. Pa. 2005) ........................................................................... 13
*Reneker v. Offill*, No. 3:08-CV-1394-D, 2009 WL 3365616 (N.D. Tex. Oct. 20, 2009) (mem. op.) ........... 7
*Reno v. Condon*, 528 U.S. 141 (2000) ......................................................................................... 9
*Wolcott v. Sebelius*, 635 F.3d 757 (5th Cir. 2011) ....................................................................... 8
*Seigler v. Best Buy Co. of Minnesota, Inc.*, 519 Fed. Appx. 604 (11th Cir. 2013) ...................... 9
*Severance v. Patterson*, 566 F.3d 490 (5th Cir. 2009) ................................................................. 7

**Statutes**

18 U.S.C. § 2721(a) ...................................................................................................................... 5
18 U.S.C. § 2721(b) ...................................................................................................................... 9
18 U.S.C. § 2724(a) ...................................................................................................................... 9

**Rules**

Federal Rule of Civil Procedure 8(a)(2) ....................................................................................... 8
Federal Rule of Civil Procedure 12(b)(6) ..................................................................................... 7
Federal Rule of Civil Procedure 12(f) ......................................................................................... 14

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Defendant Tacito & Associates, Inc. files this Brief in Support of Defendant's Motion to Dismiss Plaintiff's Class Action Complaint and Motion to Strike, and would respectfully show the Court:

## INTRODUCTION

This lawsuit is but one in a series of class action suits attorney Joseph Malley has filed related to the Driver's Privacy Protection Act.[1] Plaintiff in this lawsuit, Arthur Lopez, is also the Plaintiff in at least three other DPPA lawsuits Mr. Malley has filed.[2] Rather than addressing a legal harm to Mr. Lopez, the Class Action Complaint ("Complaint") in this case seems to be the result of deliberate actions Mr. Malley took to create a statutory violation.

The Complaint omits (or negates) key elements of a DPPA claim, but this is obscured by the Complaint's length and breadth.[3] The Complaint is littered with information that is superfluous, repetitive and immaterial, including (but not limited to) an extensive legislative history of the DPPA, a discussion of the common law of privacy, and a brief on standing in a DPPA case. None of this information, however, supplies the basic facts to establish the required elements of DPPA violation.

---

[1] The Class Action Complaint at 62-64 alleges 13 DPPA lawsuits in which the Plaintiff's attorney has been involved.

[2] *Lanning v. Nat'l Recall & Data Services, Inc.*, Cause No. 3:16-cv-02358-B, pending in the Northern District of Texas (named plaintiffs are Mark Lanning and Arthur Lopez); *Lopez v. Cross-Sell, LLC*, Cause No. 3:16-cv-02009-K, pending in the Northern District of Texas (named plaintiffs are Arthur Lopez and Mark Lanning); *In re Marie Blank/Cross v. Blank*, Bankruptcy No. 9:15-bk-07321-FMD, pending in the Bankruptcy Court, Middle District of Florida (named plaintiffs are Toby Cross and Arthur Lopez).

[3] Notably, the Complaint in the case at bar bears striking similarities, and sections that are verbatim identical, to the Complaints filed in the Northern District of Texas in Cause No. 3:16-cv-02358-B and Cause No. 3:16-cv-02009-K.

The Drivers Privacy Protection Act (also known as the Shelby Act) generally prohibits state motor vehicle departments from knowingly disclosing "personal information" the department obtained in connection with a motor vehicle record. 18 U.S.C. § 2721(a). In conjunction with this prohibition, the statute creates a private cause of action, pursuant to which "[a] person who **knowingly** obtains, discloses or uses personal information, **from a motor vehicle record**, for a purpose not permitted under [the statute] shall be liable to the individual to whom the information pertains." *Id*. at § 2724(a) (emphasis added). The DPPA is not an all-purpose privacy statute, but focuses specifically on protecting information contained in a motor vehicle record. As the Complaint itself alleges, "Congress paid particular attention to differences between motor vehicle records and other public records containing similar information, which it decided not to regulate." Complaint at 11 ¶ 21.

In the absence of facts to support a claim under the statue's plain language, the Complaint stretches the DPPA into new territory in two ways: first, it glosses over the requirement that the information have originated "from a motor vehicle record," and second, it ignores the statute's "knowing" requirement. Given the statute's plain terms, under the *Twombly* pleading standard, the Complaint fails to state a plausible claim against Defendant Tacito & Associates, Inc. and must be dismissed.

## FACTS

According to the Complaint, Plaintiff Lopez obtained a "direct marketing letter" in the mail (hereinafter, "mailer") from Don Herring Ltd. ("Don Herring"). Complaint at 18 ¶ 34(f). The mailer is attached to the Complaint as Exhibit 1, and offers to purchase Mr. Lopez's vehicle. The Complaint alleges that the mailer contained Mr. Lopez's name, address, and the type of vehicle he drove. Complaint at 34 ¶ 65. Mr. Malley, claiming to be Mr. Lopez's "personal

friend for over 25 years," contacted Don Herring, and inquired as to how the auto dealer obtained Mr. Lopez's name. Complaint at 35 ¶ 68 and Exhibit 3 (email from Mr. Malley to Don Herring). Don Herring allegedly informed Mr. Malley that the names for the mailer were obtained from a third party. Complaint at 36 ¶ 70.

Mr. Malley identified the name "Tacito & Associates Marketing" on the mailer, and took his same inquiry to that entity (named in this suit as Tacito & Associates, Inc. ["Tacito"]). Complaint at 42 ¶ 72. The Complaint pleads that Tacito responded: "The record for Mr. Lopez came from BB Direct" and "[t]heir auto list is Shelby act [sic] compliant and does not draw from the Texas DMV records." Complaint, Exhibit 5.

Mr. Malley then contacted BB Direct with the same inquiry. Complaint at 43 ¶ 76. BB Direct, in an email attached to the Complaint as Exhibit 9, responded:

> This list order came from a company out of TX, called Data Shark, Monica Braverman, owner of Data Shark has told me more than once that her file is Shelby compliant. She said her file sources are oil lube stations, insurance companies, and some auto groups. I have no idea which source contributed this particular record, or if this particular record was one of the ones that was on the list sent to Tacito or not.
>
> I've ordered auto data from Monica off and on over the years. We've found errors on her file which confirm to me that her data isn't coming from the DMV, or it would be accurate.

Complaint, Exhibit 9.

Mr. Malley then tried to reach Monica Braverman, but according to the Complaint, "Mrs [sic] Braverman did not respond." Complaint at 44 ¶ 79. The "investigation" appears to have ended there, as the Complaint fails to allege that Braverman obtained any information from a motor vehicle record.

The Complaint fails to state a claim against Tacito because it: (1) fails to allege that the personal information at issue was originally obtained from a motor vehicle record; and (2)

affirmatively pleads Tacito out of liability under the DPPA by negating the DPPA's knowledge requirement.

## ARGUMENTS AND AUTHORITIES

### A. Standard of Review

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion, the complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Iqbal,* 556 U.S. at 678, citing *Twombly*, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, citing *Twombly*, 550 U.S. at 556.

Whether a complaint states a plausible claim for relief is context-specific, and requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679. While a plaintiff's well-pled facts deserve an assumption of truth for purposes of a 12(b)(6) review, a court is <u>not</u> obligated to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.,* citing *Twombly*, 550 U.S. at 556.

Nor will courts assume that a plaintiff can prove a set of facts beyond those alleged in the complaint. *Reneker v. Offill*, No. 3:08-CV-1394-D, 2009 WL 3365616, *5 (N.D. Tex. Oct. 20, 2009) (mem. op.), citing *Ledesma for Ledesma v. Dillard Dep't Stores, Inc.*, 818 F. Supp.

983, 984 (N.D. Tex. 1993). "If a Complaint omits facts concerning pivotal elements of the pleaders' claim, the court is justified in assuming the nonexistence of such facts." *Ledesma*, 818 F. Supp. at 984. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, citing Fed. R. Civ. P. 8(a)(2).

Accordingly, Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. *Twombly* and *Iqbal* were designed to prevent a plaintiff who is "merely on a fishing expedition" from subjecting a defendant to lengthy and costly discovery. *Flagg v. Stryker Corp.,* 647 Fed. Appx. 314, 318 (5th Cir. 2016).

A court may consider any Exhibits to the pleading when conducting a 12(b)(6) analysis. *See Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) citing *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper Exhibits, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'").

Applying these standards to the Complaint at bar, the Complaint must be dismissed for failure to state a claim under the DPPA.

**B.      Plaintiff's claim against Tacito should be dismissed for failure to state a plausible claim.**

1. The Complaint fails to allege that the information came from a motor vehicle record.

The elements of a DPPA claim are recited in the statute:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

Based on this language, to implicate a section 2724 claim, a person must (1) knowingly obtain, disclose, or use personal information from a motor vehicle record; (2) for a purpose not permitted by the statute.[4]  *Id*.  Section 2724's plain language requires the personal information be "from a motor vehicle record."  *Id*.; *Seigler v. Best Buy Co. of Minnesota, Inc.*, 519 Fed. Appx. 604, 605 (11th Cir. 2013) (per curiam) ("A plain reading of the DPPA makes clear that the Act was intended to prohibit only the disclosure or redisclosure of information *originating* from state department of motor vehicles ('DMV') records." [emphasis in original]).  "On its face, the Act is concerned only with information disclosed, in the first instance, by state DMVs."  *Seigler*, 519 Fed. Appx. at 605.

That the information come from a motor vehicle record is at the very heart of the DPPA -- this is **not** a statute designed to generally protect a person's personal information, but is targeted to protect specific information based on its origination in a state motor vehicle record. *Seigler*, 519 Fed. Appx. at 605; *see also Reno v. Condon*, 528 U.S. 141, 146 (2000) (the "DPPA regulates the universe of entities that participate as suppliers to the market for motor vehicle information—*the States as initial suppliers of the information . . . .*" (emphasis added)). Accordingly, obtaining, disclosing or using a person's name, address, or even the type of vehicle they drive is not, by itself, a violation of the DPPA. 18 U.S.C. § 2724(a).  Unless the personal information obtained, used or disclosed originated "from a motor vehicle record," the DPPA is not implicated.  *Id*.; 519 Fed. Appx. at 605.

Courts have strictly construed the "from a motor vehicle record" requirement, so that even obtaining someone's personal information *from their driver's license*, is not a DPPA

---

[4] The DPPA contains 14 exceptions to its general prohibition against disclosure of personal information. 18 U.S.C. § 2721(b) (listing 14 "permissible uses").

violation. *See Fontanez v. Skeeple*, 563 Fed. Appx. 847, 849 (2nd Cir. 2014) (obtaining claimant's name and address from driver's license <u>not</u> a DPPA violation); *Seigler*, 519 Fed. Appx. at 604-05 (same).

In the case at bar, the Complaint fails to allege that Tacito obtained the information on the mailer from a motor vehicle record. Instead, the Complaint alleges that Tacito obtained the data from another Defendant, BB Direct, Inc. ("BB Direct"). Complaint at 42 ¶ 72 (alleging **"<u>Mr. Tacito responded on May 16, 2016 stating the data was supplied by Defendant BB Direct Inc. for the past 13 years</u>."** [emphases in Complaint]).

The Complaint fails to allege that BB Direct, Inc. obtained the information on the mailer from a motor vehicle record. Instead, the Complaint alleges that BB Direct obtained the data from another Defendant, Monica Braverman. Complaint at 43 ¶ 76 (alleging **"<u>Mr. Berg stated the data had been supplied by Defendant Braverman.</u>"**) [emphases in Complaint]).

The Complaint fails to allege that Monica Braverman obtained the information on the mailer from a motor vehicle record. Instead the Complaint alleges that Ms. Braverman did not respond to Plaintiff's attorney's communication. Complaint at 44 ¶ 79 (alleging "On May 17, 2016 an inquiry was sent to Monica Braverman, CEO of Defendant Netunium d/b/a DataShark regarding the statements made by Mr. Berg . . . Mrs [sic] Braverman didn't respond.").

Accordingly, in this pass-the-hot-potato style Complaint, in which each defendant's liability is wholly dependent on the information having originated in a motor vehicle record, it turns out there is no allegation the information actually came from a motor vehicle record.

The Complaint does contain additional allegations concerning Ms. Bravermen, but these allegations do nothing to implicate a DPPA violation. The Complaint alleges that Monica Braverman was formerly married to a third-party, Charles Holley. Complaint at 44 ¶ 78. The

Complaint alleges that Holley "had, and continues to in many states, directly obtain State Motor Vehicle Records from Departments of Motor Vehicle in a multitude of states, using numerous companies' names, including National Recall & Data Services Inc.. [sic]" and alleges "[a] covert investigation conducted by the Texas Department of Motor Vehicle using 'seeded' data found Mr. Holley violating the DPPA and access to Texas MVR data terminated." Complaint at 44 ¶ 78.[5]

Even assuming the truth of these factual statements, however, Braverman's former marriage to Holley does not constitute a violation of the DPPA. To reach a DPPA violation on these facts, requires layer upon layer of inferences. No such inferences are permitted. *Iqbal,* 556 U.S. at 678-79; *Reneker*, 2009 WL 3365616 at *5. Moreover, the pleading itself arguably *negates* this particular statutory element ("from a motor vehicle record"), by indicating that the information came from oil lube stations, insurance companies, and some auto groups (Complaint, Exhibit 9), sources which indisputably do not implicate the DPPA.

To be sure, the 75-page, 168-paragraph Complaint is replete with allegations that the Defendants each knowingly obtained, used, disclosed and/or resold motor vehicle records derived from a State Motor Vehicle Department, without Mr. Lopez's consent, in violation of the statue. *See, e.g*., Complaint at 4 ¶ 1; at 5 ¶ 2; at 17-18 ¶ 34; at 19-20 ¶ 36; at 28 ¶¶ 50, 51; at 29 ¶ 52; at 31 ¶ 55; at 52 ¶ 98; at 53 ¶ 100; at 56 ¶¶ 110-113. But these allegations are wholly conclusory and unsupported by underlying facts; they are precisely the type of "mere recital of the elements" that will not withstand 12(b)(6) scrutiny. *Iqbal,* 556 U.S. at 678; *see also Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 320 (5th Cir. 2009) ("[W]e must accept [plaintiff's] factual allegations but are not bound to its legal conclusions.").

---

[5] Plaintiff has already filed a separate class action DPPA claim against Mr. Holley. *See infra note* 1, *Lanning v. Nat'l Recall & Data Services, Inc.*, Cause No. 3:16-cv-02358-B.

**DEFENDANT TACITO & ASSOCIATES, INC.'S BRIEF IN SUPPORT OF**
**MOTION TO DISMISS AND, ALTERNATIVELY, MOTION TO STRIKE**                                        **PAGE 11**

Because the Complaint omits a pivotal fact (*i.e.*, that the information on the mailer came from a motor vehicle record), this court "is justified in assuming the nonexistence of such facts." *Ledesma*, 818 F. Supp. at 984. Accordingly, the Complaint fails to state a DPPA claim against Defendant Tacito and should be dismissed. 18 U.S.C. § 2724(a); *Iqbal,* 556 U.S. at 678-79; *Reneker*, 2009 WL 3365616 at *5; *Ledesma*, 818 F. Supp. at 984.

    2.  <u>The Complaint negates a required element of a DPPA violation.</u>

Separate and apart from the foregoing, the Complaint must be dismissed because it negates a required element of Plaintiff's DPPA claim against Tacito: that the Defendant "knowingly" obtained/disclosed/used personal information from a motor vehicle record. 18 U.S.C. § 2724(a) ("[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under [the statute] shall be liable to the individual to whom the information pertains.").

The Complaint itself, through an Exhibit, affirmatively pleads that Tacito communicated: "[t]he record for Mr. Lopez came from BB Direct" and "[t]heir auto list is Shelby act [sic] compliant and does not draw from the Texas DMV records." Complaint, Exhibit 5. Assuming the truth of these statements, the Complaint thus pleads that Tacito did *not* know that the information in the mailer came from a motor vehicle record. Complaint, Exhibit 5; *Wolcott*, 635 F.3d at 763.

The DPPA is not a strict liability statute. The inclusion of the term "knowing" demonstrates Congress's intent to include a *mens rea* element in this statute. 18 U.S.C. § 2724(a) ("[a] person who *knowingly* obtains, discloses or uses personal information, from a motor vehicle record . . . ." (emphasis added)). Courts which have specifically examined the DPPA's knowledge requirement have concluded that Congress intended the "knowing"

requirement to apply to the phrase "obtains, discloses or uses personal information, from a motor vehicle record." *See Pichler v. UNITE*, 228 F.R.D. 230, 241-242 (E.D. Pa. 2005), *aff'd* 542 F.3d 380, 396-97, note 21.[6]

In *Pichler*, the Second Circuit concurred with the lower's courts statutory analysis of the DPPA, which divided the relevant part of the statute into three clauses:

(1) "obtains, discloses or uses personal information" (first clause);

(2) "from a motor vehicle record" (second clause);

(3) "for a purpose not permitted" (third clause).

228 F.R.D. at 241.  The lower court recognized that the second clause modified the first clause, by limiting the relevant kind of "personal information" to information "from a motor vehicle record."  *Id*.  The court reasoned that "the first and second clauses work together to establish the 'act' element that a plaintiff must prove to recover under the DPPA." *Id*. at 241-42.  It was this "act" element, to which the "knowing" requirement applied, by virtue of its location in the statute.  *Id*. at 242 (explaining that because the adverb "knowingly" appeared immediately before three verbs ["obtains, discloses or uses"] "the most natural reading of the text limits the reach of that adverb to the verbs adjacent to it.").

In other words, a defendant has to *know* that he was obtaining/disclosing/using information from a motor vehicle record, to implicate the statute.  *See id*.  This construction of the statute is consistent with its intent and purpose, which is <u>not</u> to provide a general shield of protection over personal information regardless of its source, but (and as the Complaint expressly

---

[6] This opinion also found that "knowingly" did not, however, extend to the "purpose" part of the statute (i.e., "for a purpose not permitted under this statute).  *Id*. at 396-97.

recognizes) is specifically targeted to protect information based on the fact that it originated from a motor vehicle record. *See Reno*, 528 U.S. at 146; Complaint at 11 ¶ 21.

Because the Complaint affirmatively alleges that Tacito thought the information came from legitimate sources, it fails to allege he knew the information was from a motor vehicle record, and therefore fails to state a DPPA claim against Tacito.[7]

## MOTION TO STRIKE

Pleading in the alternative, pursuant to Federal Rule of Civil Procedure 12(f), Defendant Tacito further seeks to strike specific portions of the Complaint that are redundant, immaterial or impertinent. Fed. R. Civ. P. 12(f).

**A.    Standard of Review**

A court may strike matter from a pleading that is "redundant, immaterial, impertinent, or scandalous." *Id*. The purpose of Rule 12(f) is to clean up the pleadings, streamline the litigation and sidestep unnecessary efforts on immaterial issues. *See Ford-Green v. NHS, Inc*., 106 F.Supp. 3d 590, 615 (E.D. Pa. 2015). The burden is on the movant to establish that the challenged allegations are unrelated to the pleader's claims. *See Lutzeier v. Citigroup Inc*., 305 F.R.D. 107, 107-110 (E.D. Mo. 2015). The court has considerable discretion whether to grant a motion to strike. *See D.I.C. v. Niblo*, 821 F.Supp. 441, 449 (N.D. Tex. 1993).

---

[7] Perhaps recognizing this problem, the Complaint makes an unavailing attempt to plead around it, alleging that: "[t]he statements by [Tacito and BB Direct] that the databases . . . was [sic] 'Shelby Complaint", was an admission as to their knowledge that the databases . . . was [sic] from State Motor Vehicle Departments, and no other source, because being 'Shelby Compliant' is a term of art only used as it relates to motor vehicle records obtained from State Department of Motor Vehicles." Complaint at 45 ¶ 81. This statement is nonsensical. Defendant Tacito's alleged awareness of the Shelby Act, and belief that the information received from BB Direct was "Shelby Act compliant" and "does not draw from the Texas DMV" cannot reasonably be construed as an admission of the very opposite fact.

**B.     Immaterial allegations should be struck.**

Defendant seeks to strike the following paragraphs from the Complaint as immaterial to this case, specifically because these particular paragraphs all pertain to "vehicle service contracts" and/or "vehicle warranties," neither of which has been alleged to exist in this case. The mailer in this case (Exhibit 1 to the Complaint) involved an offer to purchase a car; but did <u>not</u> contain (and the Complaint does not allege it contained) any statements regarding warranties or vehicle service contracts.[8]  Complaint, Exhibit 1.

- <u>Defendant moves to strike paragraphs 58-59 on page 32-33</u>.  This paragraph describes six separate "participants" in the "Direct Marketing Vehicle Industry" and includes numerous references to "vehicle service contracts."  It is unclear from the remainder of the Complaint how these allegations relate to the lawsuit, especially the statements regarding "vehicle service contracts." There is no vehicle service contract alleged to exist in this lawsuit and thus these statements are immaterial.

- <u>Defendant moves to strike paragraph 64 on page 34</u>.  This paragraph alleges the "VSC Industry" is the "poster child for marketing abuse, illegal telemarking, and deceptive mailers."  "VSC Industry" is not defined in the Complaint, but likely refers to "vehicle service contracts" industry.  But no vehicle service contract has been alleged to exist in this case and thus these statements are immaterial.

- <u>Defendant moves to strike paragraph 125 on page 58</u>.  This paragraph alleges that Defendants used personal information for a mailer that "included false statements advising Plaintiff and Class Members that his auto warranties had expired, or were about to expire, creating a sense of urgency by claiming the offering period was limited, mailing such in an envelope which appeared to be state official business." Complaint at 58 ¶ 125.  However, the mailer involved in the present lawsuit (Exhibit 1 to the Complaint) does not include any statements about warranties. Nor did the Complaint attach or describe any statements about warranties made by the Defendants in this case, so that these allegations are immaterial.

Defendant moves to strike the following paragraphs as immaterial and/or redundant:

- <u>Defendant moves to strike, on page 2, the second paragraph, which ends on page 3</u>.  This paragraph asserts that the names of "Defendant Doe Individuals and Corporations 1-100 inclusive . . . are unknown to Plaintiff . . ."; but that "each of the Defendants designated

---

[8] It is possible that these paragraphs are vestiges of the nearly identical complaint Plaintiff filed in *Lanning v. Nat'l Recall & Data Services, Inc*.  *See infra* note 1.

herein as Doe are legally responsible in some manner for the performance of the acts and omissions described below . . . ." However, the Complaint never describes the acts and omissions of these Doe Defendants or otherwise explains their connection to the factual assertions against the named Defendants—which revolve around the mailer. The Complaint fails to set forth a connection between Doe Defendants and the mailer, and these allegations are thus immaterial.

- <u>Defendant moves to strike those portions of paragraphs 2(a), 2(b), 2(c), and 2(d) on page 5 which allege that Defendants' actions were taken "in order to perpetuate fraudulent activity that violated the Federal Driver Privacy Protection Act, perpetuating such activity in a heedless, willful, and wanton manner, knowingly disregarding the safety and privacy of Plaintiff and Class Members.</u>" The Complaint does not assert or otherwise describe a fraudulent act or fraud claim against any of the Defendants, so these allegations are immaterial.

- <u>Defendant moves to strike paragraphs 20-25 at pages 10-13</u>. These paragraphs contain the legislative history of the DPPA and do not contain any factual assertions or legal allegations relevant to this lawsuit.

- <u>Defendant moves to strike paragraphs 34-53 at pages 17-29</u>. This section, titled "Plaintiff Occurrences, Harm and Standing," contains legal briefing on standing, with recitations to privacy caselaw and secondary sources, as well as an additional discussion of the legislative history of the DPPA. This information may belong in a brief on the issue of standing, but does not belong in a complaint. These paragraphs do not contain any specific factual allegations that are not asserted elsewhere in the pleading, nor do they contain legal assertions specific to this case which Defendant can admit or deny. For these reasons, these paragraphs should be struck.

- <u>Defendant moves to strike pages 37-41</u>. These pages do not contain any allegations. These pages are allegedly material downloaded from Tacito's website, which depicts corporate logos of alleged customers. This material is immaterial and should be struck.

- <u>Defendant moves to strike paragraphs 83-95, at pages 47-51</u>. These paragraphs describe the legislative history and language of the DPPA. The extensive legislative history provided is immaterial, and the references to the DPPA itself are redundant. For these reasons, Defendant seeks to strike these paragraphs.

## CONCLUSION & PRAYER

For the reasons stated above, Defendant Tacito & Associates, Inc. request that the Court dismiss the suit against it dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim;

and alternatively, strike those portions of the Class Action Complained specified herein; and for any other relief at law or in equity to which this Defendant may be entitled.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was served on all known counsel of record via electronic mail, in accordance with the Federal Rules of Civil Procedure, on December 22, 2016.

*/s/ Jennifer D. Jasper*
Jennifer D. Jasper