UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARTHUR LOPEZ, individually, and on behalf of himself and all other similarly situated individuals | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-02663-B |
| Don Herring Ltd. | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

The Driver's Privacy Protection Act (DPPA) limits access to and disclosure of personal information in state-maintained motor-vehicle records and authorizes private individuals to sue those they believe have violated the act. In this case, auto dealer Don Herring Ltd. (Herring) mailed to Arthur Lopez (Lopez) an advertisement containing Lopez's name and address as well as the make and model of his car. Believing the information in the advertisement to have come from the Texas Department of Motor Vehicles's (DMV) records, Lopez filed a class-action DPPA claim against Herring and others. Herring, the only remaining defendant, now moves the Court to dismiss Lopez's suit under Federal Rule of Civil Procedure 12(b)(6), contending that Lopez has failed to plead sufficient facts to support a DPPA claim. For the reasons that follow, the Court **DENIES** Herrings motion to dismiss.

# I.

# BACKGROUND

A.   *Factual History*[1]

This case begins with an advertisement Lopez received in the mail from Herring. Doc. 47, Am. Compl., ¶ 5; Doc. 47-1, Am. Compl., Ex. 1. Having never done business with Herring, Lopez was shocked to find that the advertisement contained not only Lopez's full name and address but also the make, model, and year of his car. Doc. 47, Am. Compl., ¶23. Believing the safety of his identity was on the line, Lopez decided to investigate. *Id.* Lopez pleads that he talked to Herring Senior Sales Associate Cary Wilson, who told him that Herring obtained his vehicle information from the Texas DMV. *Id.*

Lopez then asked his attorney, Joseph Malley (Malley), to investigate further. *Id.* Malley asked Herring via mail,[2] "I understand you informed [Lopez] that the information was not obtained from [Lopez's former employer][3] but from the state motor vehicle department. Can you clarify this issue?" *Id.* Herring's General Sales Manager, Reuben Mosley, responded, "Yes that is correct. We use a third party company that supplies the information and it is gathered through vehicle registrations." *Id.*

Malley also contacted the third party the General Sales Manager mentioned: Tacito & Associates, Inc (Tacito). Doc. 1, Compl., ¶ 72; Doc. 1-4, Compl., Ex. 5. Tacito created the advertisement that triggered this action and may have provided Herring with Lopez's vehicle

---

[1] This factual history is drawn from Lopez's original and amended complaints and their attachments.

[2] Exactly who at Herring Malley emailed is unclear.

[3] Lopez was at some point worried that Herring had obtained his personal information from his former employer, another car dealership. Doc. 47-2, Am. Compl., Ex. 2.

- 2 -

information. Doc. 47-1, Am. Compl., Ex. 1; Doc. 1-4, Compl., Ex. 5. The letter Malley sent Tacito is not in the record, but Tacito's CEO responded that Tacito received Lopez's record from another company, BB Direct, and that BB Direct's auto list is "Shelby Act compliant"[4] and does not draw from Texas DMV records. Doc. 1-4, Compl., Ex. 5.

Malley then contacted BB Direct. What Malley sent to BB Direct is not in the record. BB Direct's Brian Berg responded that BB Direct had a record of an order from Tacito for Herring but no longer had the "data file." Doc. 1-8, Compl., Ex. 9. Though nothing in the complaints nor their attachments explain what this "data file" is, the Court presumes it contained information of car owners like Lopez. Berg went on to explain that BB Direct acts as a broker when it receives requests for automobile owners and obtained the list for the Tacito order from a Texas company called Data Shark. *Id.* Berg said Data Shark's owner told him that Data Shark's file is Shelby compliant and that Data Shark's file sources are oil-lube stations, insurance companies, and some auto groups. *Id.* Berg did not believe Data Shark's data came from the DMV because Data Shark's data contained errors. *Id.* Berg said also that he did not know where Lopez's information came from or whether it was even on the Tacito list. *Id.*

B.   *Procedural History*

When Lopez first filed this class-action lawsuit, he sued Herring, Tacito, BB Direct, and Monica Braverman, the owner of Data Shark, alleging they violated the DPPA and purporting to

---

[4] In 2000 Congress amended the Driver's Privacy Protection Act to include the act's current prohibitions on state officials disclosing drivers' personal information contained in DMV records. Pub. L. No. 106-346, 114 Stat. 1356 (codified as amended at 18 U.S.C. §§ 2721, 2725). The 2000 amendment is known colloquially as the Shelby Amendment. But the provision of the DPPA Lopez seeks to enforce was not amended in 2000. Thus, why Tacito and BB Direct refer to lists of personal information as "Shelby compliant" and "Shelby Act compliant" is unclear.

represent a class of "millions, if not tens of millions" of victims of the defendants' allegedly unlawful practices. Doc. 1, Compl, ¶ 136. But the Court dismissed Lopez's original complaint. Doc. 45, Electronic Order. Lopez then filed an Amended Complaint, naming Herring as the only defendant but still claiming to represent a class possibly numbering in the tens of millions. Doc. 47, Am. Compl., ¶¶ 8, 33. Though, Lopez more realistically describes the class he purports to represent as consisting of those whose personal information Herring obtained from state DMVs. *Id.* at ¶30. And whereas Lopez attached emails from Tacito and BB Direct to his original complaint, he attaches only emails from Herring to his amended complaint and omits from his pleadings any mention of Tacito, BB Direct, or Data Shark. Doc. 47-2, Am. Compl., Ex. 2; Doc. 47-3, Am. Compl., Ex. 3.

Herring now moves that the Court dismiss Lopez's amended complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 48, Mot. to Dismiss. That motion is ripe for the Court to resolve.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When analyzing rule 12(b)(6) motions, courts generally consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). Courts can consider documents attached to a motion to dismiss if the documents are referenced in the challenged complaint and central to the plaintiff's claims. *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 661–62 (N.D. Tex. 2011). During this review, factual allegations must be viewed as true and taken "in the light most favorable to the plaintiffs." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Courts are not, however, "bound to accept

as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007).

Rule 12(b)(6) motions turn on whether a complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Facially plausible complaints "'allege more than labels and conclusions'[;] . . . [the] 'factual allegations must be enough to raise a right to relief above the speculative level.'" *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). If the allegations lack sufficient detail, "this basic deficiency should . . . be exposed" before the parties and court spend unnecessary time and resources on the case. *Twombly*, 550 U.S. at 558.

## III.

## ANALYSIS

Lopez complains that Herring violated the DPPA. Doc. 47, Am. Compl., ¶¶ 3–6. The DPPA authorizes individuals to file civil actions against those they believe to have violated the act. 18 U.S.C. § 2724(a). To prevail in his civil action against Herring, Lopez must prove that Herring "knowingly . . . obtain[ed] or disclos[ed] personal information, from a motor vehicle record, for any use not permitted under . . . this title." *Id.* § 2722(a).

Herring now argues that Lopez has failed to plead a plausible claim. Doc. 48, Mot. Dismiss. The Court disagrees.

Lopez has pleaded sufficient facts to make his claim plausible. Reading the complaint and disregarding legal conclusions leaves the Court with two key facts. *See Twombly*, 550 U.S. at 555 (stating that courts should disregard legal conclusions when evaluating the sufficiency of a pleading under rule 12(b)(6)). First, Lopez alleges that, when he asked Herring where it obtained the

information in the advertisement he received in the mail, a Herring salesperson responded that Herring obtained Lopez's information from the Texas DMV. Doc. 47, Am. Compl, ¶ 23. Second, Lopez's attorney emailed Herring, "I understand you informed [Lopez] that the information was not obtained from [Lopez's former employer] but from the state motor vehicle department. Can you clarify the issue?" *Id.* Herring's General Sales Manager responded, "Yes that is correct. We use a third party company that supplies the information and it is gathered through vehicle registrations." *Id.* Taken together and in the light most favorable to Lopez, *Spivey*, 197 F.3d at 774, these pleadings make it plausible that Herring knowingly obtained Lopez's information from the DMV or disclosed it, knowing it had been obtained from the DMV.

Herring's arguments that the sales person's and General Sales Manager's statements do not make Lopez's claim plausible fail. Herring first contends that the sales person and the General Sales Manager were incorrect about how Herring obtained Lopez's information and therefore that their statements do not make Lopez's claim plausible. Doc. 51, Reply, 3–4. But the Court must take Lopez's factual pleadings as true and construe factual allegations in the plaintiff's favor. *Spivey*, 197 F.3d at 774. Thus, the Court must accept as fact who Lopez said made the statements and what they said. And the Court can reasonably infer based that information that Herring knew Lopez's information came from the DMV. Thus, the mere possibility that the sales person and General Sales Manager were incorrect about the source of Lopez's information does not render Lopez' s claim implausible.

Second, Herring argues that the General Sales Manager's statement, even if taken as true, does not make Lopez's claim plausible. Doc. 51, Reply, 3. Because the General Sales Manager said Herring obtained the information from third parties, Herring contends, the General Sales Manager

could only have been speculating about the origin of the information. *Id.* But although the manager could have been speculating, the Court can still reasonably infer that Herring knew Lopez's information came from the DMV based on what he said and the query to which he was responding.

Herring additionally contends that the General Sales Manager said only that the third parties obtained their information from "vehicle registrations" and that "vehicle registrations" is different from the state DMV. *Id.* But Lopez alleges that his attorney asked if the records came from the DMV, and the general manager said, "Yes that is correct." Doc. 47, Am. Compl. ¶ 23. Again, the Court can reasonably infer that the sales manager was confirming Malley's suspicion that Lopez's information came from the DMV.

Next, moving beyond the four corners of Lopez's complaint, Herring argues that the attachments Lopez attached to his original, now dismissed, complaint render his current claim implausible. Doc. 48, Reply, 3–4. In both Lopez's live and dismissed complaints, Lopez accuses Herring of violating the DPPA, and Lopez attaches the Herring General Sales Manager's response to Lopez's attorney's question to both complaints. Doc. 1-3, Compl., Ex. 4; Doc. 47-2, Am. Compl., Ex. 2. In the response, the General Sales Manager referred to a third party from which Herring may have obtained Lopez's information. Doc. 47, Am. Compl., ¶ 23. Lopez attached an email from this third party to his original complaint. Doc. 1-4, Compl., Ex. 5. The email was from the CEO of Tacito Marketing, which, according to the advertisement Herring sent Lopez, created the advertisement for Herring. Doc. 47-1, Am. Compl., Ex. 1. The Tacito email says in relevant part, "The record for Mr. Lopez came from BB Direct. BB Direct is a mailing list broker . . . They have been providing TACITO alternate date for over 13 years. Their auto list is Shelby Act compliant and does not draw from the Texas DMV records." Doc. 1-4, Compl., Ex. 5. Lopez's attorney also contacted BB Direct

and attached BB Direct's response to Lopez's original complaint. Only BB Direct's response is in the record; it says BB Direct received an order from Tacito regarding Herring but that BB Direct did not retain the data file. Doc. 1-8, Compl., Ex. 9. BB Direct says it obtained the list it sent to Tacito from a company called Data Shark, the owner of which has told BB Direct that Data Shark's file is Shelby compliant and that Data Shark's sources are oil lube stations, insurance companies, and some auto groups. *Id.* BB Direct did not know the source of the information for the list sent to Tacito or if Lopez's information was on the list sent to Tacito. *Id.* BB Direct said also that it has found errors on her lists, which indicated to BB Direct that Data Shark data did not come from the DMV because if it did it would not contain errors. *Id.*

At the outset, the Court must determine whether it can consider the emails on which Herring relies. Typically, courts resolving 12(b)(6) motions consider only the challenged complaint. But the Fifth Circuit has said courts may consider also a complaint's "proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Wolcott*, 635 F.3d at 763. The Fifth Circuit has allowed trial courts to consider also documents a movant attaches to its motion to dismiss as long as the plaintiff's complaint refers to the documents and the documents are "central" to the plaintiff's claims. *Kaye*, 453 B.R. at 661–62 Courts treat such documents as incorporated into the plaintiff's complaint. *Id.* at 662 n.16 (citing Fed. R. Civ. P. 10(c)).

Although the Fifth Circuit has not stated a test for determining whether a document is central to plaintiffs' claim such that a trial court may consider it when resolving a 12(b)(6) motion, *id.* at 662, Fifth Circuit precedent makes clear that a document is central to a plaintiff's claim only if "necessary to establish an element of one of the plaintiff's claims." *Id.* In contract cases, for

example, the contract on which the plaintiff relies is central to the plaintiffs claim; the plaintiff cannot prevail without the contract. *Id.*

But if a "document referenced in a plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.* at 662. For example, in *Scanlan v. Texas A&M University*, the plaintiffs sued Texas A&M University in the wake of the Texas A&M 1999 bonfire incident, alleging that the university violated their civil rights. 343 F.3d 533, 535 (5th Cir. 2003). The Fifth Circuit held that the district court erred by relying on a "final report" to dismiss the plaintiffs claims under 12(b)(6). *Id.* at 536–37. The report was not central to the plaintiffs' claims because the plaintiffs relied on "substantial, other evidence to support their claims." *Id.* at 537; *See also Kaye*, 453 B.R. at 662.

In two cases, though, the Fifth Circuit has allowed trial courts to consider at the 12(b)(6) stage materials outside the pleadings other than contracts giving rise to plaintiffs' claims. The most recent case is *Walch v. Adjutant General's Department of Texas*, 533 F.3d 289 (5th Cir. 2008). There Walch challenged his discharge from the Texas National Guard, raising "claims for deprivation of constitutional due process, conspiracy, failure to prevent conspiracy, intentional infliction of emotional distress, and retaliation." *Id.* at 292. The district court dismissed his case under 12(b)(6) but in doing so considered Walch's discharge letters, which Walsh attached to his complaint. *Id.* at 294. The Fifth Circuit affirmed because "[n]o party question[ed] the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss." *Id.*

*Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285 (5th Cir. 2004), though ultimately inapposite, also warrants some discussion. Causey sued Sewell and General Motors, alleging that they

wrongfully discriminated against him because of his race when he asked Sewell to repair his car. *Id.* at 287. Relevant here is General Motors's motion to dismiss. After the district court dismissed Causey's case, the Fifth Circuit approved the trial court's considering of the franchising agreement between Sewell and General Motors. *Id.* at 290. The agreement was relevant because Causey sought to hold General Motors vicariously liable for Sewell's allegedly wrongful conduct. *Id.* Ultimately, agreement showed that General Motors was a separate legal entity from Sewell and therefore could not be vicariously liable for Sewell's allegedly wrongful actions. *Id.* But the trial court did not say whether it treated the motion as one to dismiss for failure to state a claim or as a motion for summary judgment, nor did the Fifth Circuit actually hold anything about what trial courts may consider when resolving 12(b)(6) motions. *Id.* Rather, the Fifth Circuit affirmed because, in a prior case, the Fifth Circuit affirmed a trial court's granting of summary judgment on similar facts. *Id.* (citing *Arguello v. Conoco, Inc.*, 207 F.3d 803, 807 (5th Cir. 2000)). *Causey* thus sheds little light on the question of what trial courts may consider when resolving 12(b)(6) motions.

Here, Herring wants the Court to consider not only emails attached to the challenged complaint but also emails attached to a complaint the Court has already dismissed. Doc. 51, Reply, 3, 6. But the Court may not consider the emails. First, the emails are not attached to the challenged complaint. *See Wolcott*, 635 F.3d at 763 (stating that trial court may consider complaint's proper attachments).

Second, the Court cannot judicially notice the facts Herring says the emails establish. *Id.* at 763 (allowing trial courts to consider facts they can judicially notice). Federal Rule of Evidence 201 determines what facts a court may judicially notice. Courts may judicially notice facts not subject to reasonable dispute that are not subject to reasonable dispute because they are "generally known

within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Herring argues that the emails show that third parties from which it obtained Lopez's information did not obtain Lopez's information from the Texas DMV, which means Herring could not possibly have violated the DPPA. Doc. 51, Reply, 6. But that Tacito, BB Direct, and Data Shark obtained Lopez's records from a source other than Texas or some other state's DMV is not generally known in this Court's territorial jurisdiction, nor can the Court determine the truth of Herring's assertions from sources whose accuracy cannot be reasonably questioned. *See* Fed. R. Evid. 201(b).

Nor can the Court consider the emails on the ground that they are central to Lopez's claim. Here, the emails on which Herring relies are like the report in *Scanlan* and unlike a contract in a contract case. Like the report the district court improperly considered in *Scanlan*, the emails Herring wants the Court to consider are "merely evidence," *Kaye*, 453 B.R. at 662; they do not give rise to Lopez's claim in the way a contract gives rise to a contract claim. Though the emails may be relevant, probative evidence in Lopez's case, they are not legally necessary for Lopez to prevail.

*Walch* does not counsel otherwise. In *Walch*, the documents the Fifth Circuit considered were referenced by the plaintiffs' complaint and attached to the plaintiffs' response to the defendant's motion to dismiss. *Walch*, 553 F.3d at 294. But here, Lopez neither attached the emails to his complaint or his response to Herring's motion to dismiss nor referenced the emails in his live complaint. Thus, the Court declines to incorporate the emails Herring wants the Court to consider into Lopez's amended complaint.

Even if the Court considered the email incorporated into Lopez's complaint, the Court would deny Herring's motion. At the 12(b)(6) stage, the Court must accept Lopez's pleadings as facts.

*Spivey*, 197 F.3d at 774. The emails Herring wants the Court to consider contradict the facts Lopez pleaded, but that does not mean the emails render Lopez's claim implausible. At any rate, the oddity of the Court comparing pleadings it must accept as facts and actual evidence demonstrates why courts generally limit their 12(b)(6) analysis to the pleadings.

There is still one way for the Court to consider the emails attached to Lopez's original complaint. But that would require converting Herring's motion to dismiss into a motion for summary judgment, Fed. R. Civ. P. 12(d), a procedural vehicle that allows court to consider evidence the parties submit, *id.* 56(c). The Court declines to issue summary judgment for Herring at this time. Although the emails on which Herring relies may be some evidence tending to disprove Lopez's claim, granting summary judgment before Lopez has had the chance to gather and submit evidence would be improper.

One matter remains unresolved: Herring's motion to strike portions of Lopez's amended complaint under Federal Rule of Civil Procedure 12(f). Doc. 48, Mot. to Dismiss, 8. Rule 12(f) allows courts to strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike under rule 12(f) are disfavored. *FDIC v. Cheng*, 832 F. Supp. 181, 185 (N.D. Tex. 1993). A court should grant a 12(f) motion to strike only when "the matter of which the movant complains bears no possible relation to the controversy or may cause the objecting party prejudice." *OKC Corp. v. Williams*, 461 F. Supp. 540, 550 (N.D. Tex. 1978). The Court will not strike Lopez's pleadings because the pleadings are related to the controversy and do not prejudice Herring.

## IV.

## CONCLUSION

The Court **DENIES** Herring's motion to dismiss Lopez's Amended Complaint and **DENIES** Herring's motion to strike. Doc. 48, Mot. to Dismiss.

**SO ORDERED.**

**SIGNED: January 4, 2018.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE